# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMENTAL CENTER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants,<br><br>and<br><br>CONOCOPHILLIPS ALASKA, INC.,<br><br>Intervenor-Defendant. | Case No. 3:18-cv-00030-SLG |

## ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 35 is Plaintiffs Northern Alaska Environmental Center, Alaska Wilderness League, Defenders of Wildlife, the Sierra Club, and The Wilderness Society's ("Plaintiffs") motion for summary judgment. Intervenor-Defendant ConocoPhillips Alaska, Inc. ("CPAI") filed an opposition and cross-motion for summary judgment at Docket 46. Defendants United States Department of the Interior, United States Bureau of Land Management, Ryan Zinke, and Brian Steed ("Federal Defendants") filed an opposition and cross-motion for summary judgment at Docket 47. Plaintiffs replied at Docket 48. Oral argument was held on September 21, 2018, at Anchorage, Alaska.

## BACKGROUND

This case involves the 2017 lease sale for parcels in the National Petroleum Reserve-Alaska ("NPR-A").[1] The NPR-A is comprised of approximately 23 million acres.[2] It is governed by the Naval Petroleum Reserves Production Act of 1976 ("NPRPA"),[3] which requires the Secretary of the Interior to "conduct an expeditious program of competitive leasing of oil and gas in the Reserve . . . ."[4]

In November 2012, the Bureau of Land Management ("BLM") issued a Final Integrated Activity Plan/Environmental Impact Statement ("IAP/EIS"), which described five alternatives for oil and gas leasing in the NPR-A.[5] In February 2013, the Secretary of the Interior issued a Record of Decision ("ROD"), which adopted one of the five alternatives and made "approximately 11.8 million acres available for oil and gas leasing."[6]

On June 28, 2017, BLM issued a call for nominations and comments for its 2017 lease sale.[7] BLM completed a Determination of NEPA Adequacy ("DNA") on September

---

[1] A related case, *Natural Res. Def. Council, et al. v. Zinke, et al.*, 3:18-cv-00031-SLG, was filed the same day.

[2] *See* Administrative Record ("AR") 0015.

[3] 42 U.S.C. §§ 6501–08.

[4] 42 U.S.C. § 6506a(a).

[5] *See* AR 0002–09 (IAP/EIS).

[6] AR 3417 (ROD); *see also* AR 3420–28 (ROD section describing the Secretary's decision).

[7] *See* AR 3579 (Call for Nominations and Comments for 2017 Lease Sale).

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 2 of 12

26, 2017.[8] On December 6, 2017, BLM held the 2017 lease sale.[9] BLM offered 900 tracts comprising approximately 10.3 million acres of the 11.8 million acres identified in the 2013 ROD, of which seven tracts, comprising approximately 80,000 acres, received bids.[10] On February 22, 2018, BLM completed a revised DNA.[11] BLM issued leases for the seven tracts on February 23, 2018.[12]

On February 2, 2018, prior to the issuance of the leases from the 2017 lease sale, Plaintiffs filed their Complaint in this action.[13] Plaintiffs filed an Amended Complaint on May 21, 2018.[14] Plaintiffs' Amended Complaint pleads three causes of action: The First Cause of Action alleges that BLM violated the National Environmental Protection Act ("NEPA"), its implementing regulations, and the Administrative Procedure Act ("APA")[15] when it held "the lease sale [and issued the leases] without first preparing an EIS or EA."[16] The Second Cause of Action alleges that BLM violated NEPA, its implementing regulations, and the APA[17] when it held "the 2017 lease sale without first conducting an

---

[8] *See* AR 9513–9516.

[9] *See* AR 9711 (2017 Lease Sale Results Summary).

[10] *See* AR 9711 (2017 Lease Sale Results Summary).

[11] *See* AR 9723–31.

[12] *See* AR 9767 (2017 Lease Decision).

[13] *See generally* Docket 1 (Complaint).

[14] *See generally* Docket 32 (Amended Complaint).

[15] *See* Docket 32 at 15–16, ¶¶ 54–60; 42 U.S.C. § 4332(2)(C) [sic]; 40 C.F.R. §§ 1501.4, 1502.1, .14, .16, 1508.7; 5 U.S.C. § 706(2).

[16] Docket 32 (Amended Complaint) at 16, ¶ 60.

[17] *See* Docket 32 at 16–17, ¶¶ 61–67; 42 U.S.C. § 4332(C)(i); 40 C.F.R. § 1508.7; 5 U.S.C. § 706(2).

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 3 of 12

adequate assessment of the direct, indirect, and cumulative impacts . . . ."[18] The Third Cause of Action alleges that BLM violated its own regulations and the APA[19] when it "issu[ed] a revised DNA after it had already conducted the 2017 lease sale."[20]

## LEGAL STANDARD

The Court reviews "BLM's compliance with NEPA under the [APA's] deferential 'arbitrary and capricious' standard[.]"[21] "[W]hen an agency complies in good faith with the requirements of NEPA and issues an EIS indicating that the agency has taken a hard look at the pertinent environmental questions, its decision should be afforded great deference."[22]

"Once an agency has taken a 'hard look' at 'every significant aspect of the environmental impact' of a proposed major federal action, . . . it is not required to repeat its analysis simply because the agency makes subsequent discretionary choices in implementing the program."[23] "So long as the impacts of the steps that the agency takes were contemplated and analyzed by the earlier NEPA analysis, the agency need not supplement the original EIS or make a new assessment."[24]

---

[18] Docket 32 at 17, ¶ 67.

[19] *See* Docket 32 at 17–18, ¶¶ 68–71; 43 C.F.R. § 3131.2(b); 5 U.S.C. § 706(2).

[20] Docket 32 at 18, ¶ 70.

[21] *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 641 (9th Cir. 2010) (citing 5 U.S.C. § 706(2)(A)).

[22] *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 977 (9th Cir. 2006) (citing *North Slope Borough v. Andrus*, 642 F.2d 589, 599 (D.C. Cir. 1980)).

[23] *Mayo v. Reynolds*, 875 F.3d 11, 20–21 (D.C. Cir. 2017) (quoting *Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983)).

[24] *Mayo*, 875 F.3d at 21.

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 4 of 12

**DISCUSSION**

I. The Court may consider Plaintiffs' Amended Complaint.

Federal Defendants argue that Plaintiffs' claims should be dismissed "because they filed their complaint before the leases were issued[.]"[25] Plaintiffs respond that the Court has jurisdiction because they filed an Amended Complaint "after BLM issued the leases."[26] The Ninth Circuit held in *Northstar Financial Advisors, Inc. v. Schwab Investments* that a court may rely on an amended complaint that satisfies the jurisdictional defects of the previous complaint.[27] Because Plaintiffs filed their Amended Complaint after BLM issued the leases, dismissal on this basis is unwarranted.

II. BLM was not required to conduct an EIS or EA for the 2017 lease sale.

Plaintiffs assert that BLM violated NEPA by issuing leases without conducting an EIS or EA.[28] Federal Defendants respond that the IAP/EIS is a sufficient environmental analysis that covers the 2017 lease sale and that, in any event, the Revised DNA

---

[25] Docket 47 at 28.

[26] Docket 48 at 9.

[27] 779 F.3d 1036, 1043–48 (9th Cir. 2015). Federal Defendants rely on two older Ninth Circuit opinions: *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380–81, 1386 (9th Cir. 1988) (holding that district court lacked subject matter jurisdiction over original complaint and declining to look to amended complaint because "[s]ubject matter jurisdiction must exist as of the time the action is commenced") and *Mamigonian v. Biggs*, 710 F.3d 936, 941–42 (9th Cir. 2013) (raised by Federal Defendants at oral argument) (citing *Morongo* in holding that district court lacked jurisdiction in immigration matter because no final agency action had occurred at time of filing). In *Northstar*, the Ninth Circuit criticized the "inflexibility suggested by" *Morongo*'s language and explained that "[a] rule that would turn on the label attached to a pleading is difficult for us to accept." *Northstar*, 779 F.3d at 1046, 1047. *Mamigonian* involved little analysis beyond its citation to *Morongo*. *Mamigonian*, 710 F.3d at 941–42. The Court relies on the more recent precedent, *Northstar*, particularly in light of its careful treatment of the legal and policy implications of this issue.

[28] *See* Docket 36 (Memorandum in Support of Plaintiffs' Motion for Summary Judgment) at 31.

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 5 of 12

constituted sufficient supplemental environmental analysis.[29] Plaintiffs reply that the Court should consider only the original DNA and view the 2017 lease sale and lease issuances as major federal actions in and of themselves that require a new and site specific EA or EIS. Plaintiffs maintain that the supplementation of the existing IAP/EIS at this stage is insufficient.[30]

The Ninth Circuit's decision in *Northern Alaska Environmental Center v. Kempthorne* controls here.[31] *Kempthorne* upheld the government's leasing program in the Northwest Planning Area ("NWPA") of the NPR-A. The Court set out the factual background as follows: "BLM published the Final EIS [("FEIS")] in December 2003 to open parts of the NWPA to leasing. The FEIS adopted the Preferred Alternative of the draft EIS, opening the BLM administered lands in the NWPA to leasing subject to certain significant limitations."[32] "In assessing the environmental impact of the leasing program for purposes of preparing the FEIS, the BLM had no way of knowing what, if any, areas subsequent exploration would find most suitable for drilling. Thus, it did not do an analysis of any specific parcels."[33] However, "BLM did do an analysis of the possible effects of drilling in the climatic environment of the region. That analysis projected two

---

[29] *See* Docket 47 at 36–37. The parties disagree as to whether the Court may consider the Revised DNA or must rely solely on the more cursory original DNA. The Court does not reach this issue because, as discussed further below, Plaintiffs have not raised any claim challenging the agency's decision not to supplement the IAP/EIS, such that review of the DNA or Revised DNA is not necessary to the Court's determination.

[30] *See* Docket 48 at 18.

[31] 457 F.3d 969 (9th Cir. 2006).

[32] *Kempthorne*, 457 F.3d at 974.

[33] *Id.*

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 6 of 12

hypotheticals, representing each end of the available spectrum of possibilities."[34] "Because [BLM's] analysis was based upon hypothetical future projections of what might be undertaken in the exploration and development phases, and was conducted on a resource by resource basis, the EIS did not attempt to examine the impact on specific parcels."[35] In *Kempthorne*, at the same time that BLM completed the EIS, it offered certain parcels for lease. The Ninth Circuit's opinion indicates that 120 parcels had been leased but "[n]o exploration had begun."[36] The plaintiffs in that case alleged "that by not undertaking a parcel by parcel analysis of the environmental consequences of projected exploration and drilling [for the leased parcels], the BLM had failed to satisfy the NEPA requirement of site specific analysis."[37]

The Circuit Court found "no question" that "approval of the leasing program represents an irretrievable commitment of resources" requiring a NEPA analysis.[38] "The issue," the Circuit Court determined, was "whether [the approval of the leasing program] was sufficiently site specific."[39] The Circuit Court observed that the facts in one of its prior opinions, *Conner v. Burford*, were as follows:

> Two types of leases were involved. One, the so called "no surface occupancy" or "NSO" leases, forbid any use, or even occupancy of the surface of the national forest land being leased, without BLM approval of the specific, surface-disturbing activity the lessees planned to undertake.

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at 976.

[39] *Id.*

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 7 of 12

> We held that such leases themselves involved no "irretrievable commitment of resources" and no EIS was required at the leasing stage.
>
> The second and more numerous type of leases in *Conner* were "non NSO" leases. They authorized the lessees to undertake development subject to government regulation of surface disturbing activities such as roads and drilling. The government could not totally preclude such activities, however, and for that reason we held an EIS was required for non NSO leases.[40]

The *Kempthorne* Court determined the NWPA leases before it "are more like the 'non NSO leases' in *Conner*," because while BLM could "condition permits for drilling on implementation of environmentally protective measures" and potentially deny them outright if "mitigation measures are not available," BLM could not "forbid all oil and gas development in Alaska's NWPA."[41] Therefore, the Ninth Circuit held that the NWPA leasing program "constitute[d] an irretrievable commitment of resources. An EIS is undeniably required, and, indeed one has been prepared."[42]

The *Kempthorne* Court defined the remaining question as whether "the EIS is insufficient because it does not undertake a parcel by parcel analysis of surfaces that will eventually be explored and developed." The Ninth Circuit found *Conner* to be "of no assistance to plaintiffs, for we did not discuss the degree of site specificity required in the EIS. The only question was whether one had to be completed at all."[43]

The Ninth Circuit highlighted the "uncertainty" that exists in the early stages of oil and gas development, and determined that "when an agency complies in good faith with

---

[40] *Id.* (citing *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988)).

[41] *Id.*

[42] *Id.*

[43] *Id.*

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 8 of 12

the requirements of NEPA and issues an EIS indicating that the agency has taken a hard look at the pertinent environmental questions, its decision should be afforded great deference."[44] Therefore, the Circuit Court held that although a parcel-specific EIS analysis had not yet been undertaken for the leased areas, there was "no basis for holding that the analysis in the EIS was arbitrary, capricious, or done in bad faith."[45]

The *Kempthorne* Court recognized that a parcel-specific EIS analysis would be required before any actual exploration or development activity could occur on a leased parcel.[46] It emphasized that "[a]ny later plan for actual exploration by lessees will be subject to a period of review before being accepted, rejected or modified by the Secretary."[47] And the Court recognized that "Plaintiffs will have an opportunity to comment on any later EIS. In addition, before any activity for exploration or development occurs, permits from several agencies may be required and additional permit conditions imposed for the protection of land, water and wildlife resources."[48]

This case is similar to *Kempthorne*. As in *Kempthorne*, in this case BLM prepared a programmatic IAP/EIS; Plaintiffs do not assert here that the IAP/EIS failed to take a hard look at the environmental consequences of oil leasing, exploration, and development in the NPR-A.[49] And as in *Kempthorne*, BLM here produced its IAP/EIS despite

---

[44] *Id.* at 977 (citing *North Slope Borough v. Andrus*, 642 F.2d 589, 599 (D.C. Cir. 1980)).

[45] *Kempthorne*, 457 F.3d at 977.

[46] *Id.*

[47] *Id.* (citing 43 C.F.R. § 3162.3–1(c)).

[48] *Kempthorne*, 457 F.3d at 977 (citing 43 C.F.R. § 3162.3–1(c)).

[49] *See, e.g.*, AR 581–83 (Assumptions of the IAP/EIS). If Plaintiffs had sought to assert that the IAP/EIS failed to take a hard look at the environmental consequences of oil leasing, exploration,

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 9 of 12

uncertainty as to the scope of potential oil and gas exploration and extraction activity. And as in *Kempthorne*, the federal government has entered into "non-NSO leases" without preparing a parcel-specific analysis for each lease.[50] In *Kempthorne*, the Ninth Circuit upheld the issuance of leases prior to a site specific analysis of each leased parcel.[51] In that respect, *Kempthorne* is controlling.

A primary distinction between *Kempthorne* and this case is that the leases in *Kempthorne* were issued promptly after the completion of the FEIS. The 2017 lease sale

---

and development in the NPR-A, they would have been required to bring their claim within the 60-day within the NPRPA's 60-day time frame for instituting a NEPA challenge to an EIS. *See* 42 U.S.C. § 6506a(n)(1) ("Any action seeking judicial review of the adequacy of any program or site-specific environmental impact statement under section 102 of the National Environmental Policy Act of 1969 (42 U.S.C. [§] 4332) concerning oil and gas leasing in the National Petroleum Reserve—Alaska shall be barred unless brought in the appropriate District Court within 60 days after notice of the availability of such statement is published in the Federal Register."). The notice of availability for the IAP/EIS was published in the Federal Register on December 28, 2012. *See* 77 Fed. Reg. 76,515, (Dec. 28, 2012). February 26, 2013 marked 60 days from the publication date. Plaintiffs did not assert a challenge to the adequacy of the IAP/EIS by that date.

[50] Plaintiffs seek to distinguish *Kempthorne* by maintaining the leases in *Kempthorne* are more similar to NSO leases than the leases in the present case. *See* Docket 48 at 15–16 (citations, quotation marks, and brackets omitted) ("Although the court in *Kempthorne* stated the leasing program as a whole was an irretrievable commitment of resources in the sense that BLM could not forbid all oil and gas activities in the northwest area because of the statutory requirement to conduct oil and gas, the court also assumed BLM could deny a specific application altogether if a particularly sensitive area is sought to be developed and mitigation measures are not available. Here, BLM does not assert that it has retained the authority to prohibit or deny later applications for activities outright. Because BLM gave up its absolute ability to prohibit potentially significant impacts by issuing non-NSO leases, BLM was required to conduct a thorough NEPA analysis to determine whether the sale would have a substantial environmental impact."). However, 43 C.F.R. § 3162.3–1(c) applies in each case, and requires the lessee or operating rights owner to "submit to the authorized officer for approval an Application for Permit to Drill for each well. No drilling operations, nor surface disturbance preliminary thereto, may be commenced prior to the authorized officer's approval of the permit." The *Kempthorne* Court relied on the regulation in holding that "[a]ny later plan for actual exploration by lessees will be subject to a period of review before being accepted, rejected or modified by the Secretary." *See Kempthorne*, 457 F.3d at 977 (citing 43 C.F.R. § 3162.3–1(c)).

[51] *Kempthorne*, 457 F.3d at 977.

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 10 of 12

at issue in this case occurred several years after the completion of the IAP/EIS. This raises the question of whether the IAP/EIS adequately addresses the 2017 lease sale in light of new circumstances. NEPA's implementing regulations do require that "[a]gencies . . . [s]hall prepare supplements to either draft or final environmental impact statements if . . . [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."[52] As with "the decision whether to prepare an EIS in the first instance," an agency must supplement an EIS "[i]f there remains 'major Federal actio[n]' to occur, and if the new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered[.]"[53] Plaintiffs have not asserted that a supplemental EIS is necessary in this case; rather, they maintain an entirely new EA or EIS is required.[54] As such, Plaintiffs have waived any potential supplementation claims by failing to assert them in their Amended Complaint.

---

[52] 40 C.F.R. § 1502.9(c)(ii).

[53] *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 374 (1989) (quoting 42 U.S.C. § 4332(2)(C)).

[54] *See generally* Docket 32; *see also* Docket 48 at 18 (citations omitted) ("BLM and CPAI are mistaken in arguing the Court should apply the standards applicable to supplemental EISs (SEIS). This case is not challenging the content of the IAP, and Northern Center is not arguing that BLM needs to prepare a supplemental NEPA analysis for the IAP. BLM's obligation to supplement the IAP EIS is not at issue."). The Court does not need to reach the issue. However, supplementation would likely have been unnecessary. *See Mayo v. Reynolds*, 875 F.3d 11, 20–21 (D.C. Cir. 2017) (holding that EIS took sufficient hard look at environmental consequences such that annual approvals of hunting under that EIS did not require supplementation); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 508–09, 513 (D.C. Cir. 2010) (holding that supplementation of EIS would not have been required had final EIS underestimated the number of drilled wells, and holding that two nascent development projects were at sufficiently early stage such that no cumulative impacts analysis was required).

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 11 of 12

For the foregoing reasons, the Court will deny summary judgment to Plaintiffs and grant summary judgment to CPAI and Federal Defendants.

## CONCLUSION

In light of the foregoing, Plaintiffs' Motion for Summary Judgment at Docket 35 is DENIED; Intervenor-Defendant CPAI's Cross-Motion for Summary Judgment at Docket 46 is GRANTED; and Federal Defendants' Cross-Motion for Summary Judgment at Docket 47 is GRANTED.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 6th day of December, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:18-cv-00030-SLG, *NAEC, et al. v. US Dep't of the Interior, et al.*
Order re Cross-Motions for Summary Judgment
Page 12 of 12